**F. J. Lewis Manufacturing Company, Appellee, v. The Pennsylvania Railroad Company, Appellant.**

**Gen. No. 34,233.**

Heard in the first division of this court for the first district at the April term, 1930. Opinion filed June 30, 1930.

LOESCH, SCOFIELD, LOESCH & RICHARDS, for appellant; EDWARD M. BURKE, of counsel.

BARRETT, BARRETT & WERMUTH, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by defendant from a judgment in the sum of $266.21 entered upon the finding of the court. The declaration of plaintiff consisted of the common counts only. The action is based on the collection by defendant of a check to which the name of plaintiff was forged. Defendant filed a plea of the general issue with notice of special defenses: (1) that the negligence on the part of plaintiff precluded recovery; and (2) that the period of time between the

date of the forgery and the discovery of the same by plaintiff was sufficient to prevent a recovery.

There is no controversy as to any material facts. In September, 1925, plaintiff maintained in its business a department called the "Liquids Despatch Line." This department had its own bank account at the Standard Trust & Savings Bank in Chicago, and this account was separate and apart from other accounts of plaintiff. F. J. Lewis and W. H. Lewis had authority to sign checks on the account of the Liquids Despatch Line without any counter-signatures. Mr. Curda and Mr. J. R. O'Connor had authority to sign such checks jointly.

Up to August, 1922, F. J. Lewis was president of the plaintiff company, and thereafter he was chairman of its board of directors. Plaintiff employed one Shilling, whose usual duties were to keep the records of tank cars used in plaintiff's business.

On October 1, 1925, Shilling bought from one Flohr, a ticket agent of defendant railroad company in Chicago, four railroad tickets. The reservations were made by Shilling in the name of plaintiff company. Flohr had known Shilling for three or four years prior to this transaction, and he took in payment of these tickets and reservations the check of plaintiff to the order of defendant drawn upon the account of the Liquids Despatch Line in the Standard Trust & Savings Bank. The check appears in the record as Exhibit 1. Upon its face it is as follows:

"LIQUIDS DESPATCH LINE

We furnish tank cars for transportation of all kinds of liquids

Paid                Chicago, 9/26/25 No. 11912
10-3-25          Pay To Order of
2-26            Pennsylvania Railroad Co.    $218.96
Exactly Two Hundred Eighteen Dollars Ninety-six Cents

LIQUIDS DESPATCH LINE
Countersigned by W. H. Lewis
J. R. O'Connor                                    Agent
Standard Trust & Savings Bank
2.26                         Chicago''

In the upper left-hand corner of the face of the check appears the printed statement: ''Payee in indorsing this check acknowledges payment in full of the following accounts: No. 10125—$218.96.'' In the lower left-hand corner is the printed statement: ''Void if detached.'' On the back of the check appears the indorsement by a stamp: ''For deposit only to the credit of the Pennsylvania Railroad Company, C. R. Mersch, Agent'' and the further indorsement: ''Paid through Chicago Clearing House, October 3, 1925, to the First National Bank of Chicago.''

On the same date, October 3, 1925, the Standard Trust & Savings Bank deducted the amount of the check from the account of the Liquids Despatch Line at that bank, and at the end of the month rendered to plaintiff a statement showing such payment on account of the check. The signature of W. H. Lewis upon this check was a forgery.

When, according to its custom, in October, 1925, the Standard Trust & Savings Bank rendered a statement of its account to plaintiff, Mr. O'Connor and Mr. Binchey were bookkeepers for plaintiff. By the system then in operation, after the canceled checks were returned from the bank they were handed to Mr. Binchey, who would check the same against the bank statements and would then compare the deposits as shown on the statements with his records. After checking the canceled checks and the bank statements against his records and the check register, and finally after deducting the amount of outstanding checks, he would balance the bank statements with his bank account on the books.

Plaintiff did not discover this particular forgery until May, 1927, and on June 22, 1927, for the first time demanded that defendant pay to it the amount of the check, which defendant refused to do.

These four railroad tickets were never delivered to plaintiff company nor used by it. Flohr, the agent of defendant, had taken the checks of the Liquids Despatch Line before in payment of tickets sold to Shilling for plaintiff, and no person other than Shilling ever bought tickets from defendant railroad company for plaintiff before that time.

The court refused to allow questions as to whether Shilling held any property of plaintiff in his own name and as to whether prior to this time he, Shilling, had forged other checks of the Liquids Depatch Line. Defendant, upon objection by plaintiff, stated that he proposed to show by the witness that beginning in 1919 and up to 1927, Shilling forged checks totaling in the "vicinity" of $70,000, and that it was not discovered by the F. J. Lewis Manufacturing Company over that period of eight years. Evidence as to whether W. H. Lewis in 1925 ever looked at the bank statement as returned, as to whether Binchey in 1925 or thereafter made any report about the returned checks being forged, and as to when plaintiff first discovered that its checks were being forged by Shilling, was all excluded upon the theory that the negligence of plaintiff was wholly immaterial.

At the close of the evidence propositions of law and of fact were submitted. At the request of plaintiff the court held as law:

"That where a person or corporation obtains money of another, which it is inequitable or unjust for it to retain, the person entitled to it may maintain an action for money had and received for its recovery, and it is not necessary that there should be an express promise to pay, as the law implies a promise.

"That where a person or corporation receives a sum of money by means of a forged check to which one of the required signatures for the maker was forged, and retains the proceeds thereof, the maker can in an action in assumpsit for money had and received, recover such sum of money from the person or corporation so receiving and retaining the proceeds of said forged check."

The court further held that the maker's negligence in not sooner discovering the forgery was no defense to the action; that a person or corporation called upon to act upon the faith of the written instrument must ascertain its genuineness at its peril. The court refused to find as a fact, as requested by defendant, that the defendant was not negligent.

It is the contention of defendant that it is the law in this State that in the absence of fraud a purported maker of a check on which the signature of the maker was forged, who pays the same when it is presented, cannot recover the amount thereof from the payee in the check; that this proposition of law is applicable to the facts of this case, and that the court erred in holding to the contrary. Defendant relies on the case of *Price v. Neal,* 3 Burr. 1354; 96 Eng. Reprint 221.

That case held in substance that plaintiff Price could not recover money that he had paid by mistake upon two bills drawn against him which were forged, he thinking that the bills were true and genuine. Lord Mansfield held that it was incumbent upon the plaintiff to be satisfied "that the bill drawn upon him was in the drawer's hand, before he accepted or paid it"; but that it was not incumbent upon defendant, who in good faith had presented the bills for payment, to inquire into that.

The rule of law announced in that case seems to have been generally followed by the courts of this country. *Cooke v. United States,* 91 U. S. 389, 23 L.

Ed. 237; *United States Bank v. Bank of Georgia,* 10
Wheat. (U. S.) 333, 6 L. Ed. 334; 23 U. S. 333; *Ellis &
Morton v. Ohio Life Ins. & Trust Co.,* 4 Ohio St. 628.
That rule is also generally accepted by the textwrit-
ers. 8 Corpus Juris, pp. 606–608, sec. 844; 3 Ruling
Case Law, p. 1294, sec. 527. While there is some au-
thority to the contrary, it is generally held that this
rule states the law applicable in States which have
adopted the Negotiable Instruments Act, Cahill's St.
ch. 98, ¶ 21 *et seq.* That act was adopted by the State
of Illinois in 1907, and as stated in *National City Bank
of Chicago v. National Bank of Republic,* 300 Ill. 103:

"The law was enacted for the purpose of furnishing
in itself a certain guide for the determination of all
questions covered thereby relating to commercial
paper, and, so far as it speaks without ambiguity as
to any such question, reference to case law as it existed
prior to the enactment is more likely to be misleading
than beneficial."

Section 23 of that act (see Cahill's St. ch. 98, ¶ 43;
Smith-Hurd's Ill. Rev. Stat. 1929, chap. 98, p. 1953)
provides:

"Where a signature is forged or made without au-
thority, it is wholly inoperative, and no right to retain
the instrument or to give a discharge thereof, or to
enforce payment thereof against any party thereto,
can be acquired through or under such signature, un-
less the party against whom it is sought to enforce
such right is precluded from setting up the forgery or
want of authority."

Section 62 of that act (see Cahill's St. ch. 98, ¶ 82;
Smith-Hurd's Ill. Rev. Stat. 1929, chap. 98, p. 1957)
provides:

"The acceptor by accepting the instrument engages
that he will pay it according to the tenor of his accept-
ance, and admits:

(1)   The existence of the drawer, the genuineness
of his signature, and his capacity and authority to
draw the instrument; and

(2) The existence of the payee and his then capacity to indorse.''

The weight of authority seems to be that by the enactment of section 62 it was the intention to adopt the doctrine of *Price v. Neal,* and that said section is applicable to payment or acceptance by the drawee of a forged bill or check. (See Brannan's Negotiable Instruments Law, Ann., 4th ed., 1926, pp. 555–576.) Of the numerous cases so holding, attention may be called to *First Nat. Bank v. Brule Nat. Bank,* 41 S. Dak. 87; 161 N. W. 616, where the court, upon a rehearing, modified its opinion to the contrary in the same case as reported in 38 S. Dak. 396. That there is authority against this construction will appear from an examination of *South Boston Trust Co. v. Levin,* 249 Mass. 45, 143 N. E. 816; in which, however, on common-law principles the doctrine of *Price v. Neal* was approved. Without citing section 62, the Supreme Court of Illinois seems to have applied the rule of *Price v. Neal* in *First State Bank & Trust Co. v. First Nat. Bank,* 314 Ill. 269, affirming 234 Ill. App. 39.

The author of Brannan's Negotiable Instruments Law, Ann., in the preface to the 4th edition, states:

''The position of a bank paying a forged or altered check or bill, or an overdraft, is not clearly and satisfactorily covered by sec. 62. In the case of forgery of the drawer's signature, recent cases have shown an increased uniformity in following *Price v. Neal,* but the law as to raised checks and overdrafts still remains uncertain.''

Plaintiff cites and relies on *Williamsburgh Trust Co. v. Tum Suden,* 105 N. Y. S. 335, where Suden, who negotiated certain checks, to which the names of the purported drawer had been forged, and put them into circulation with his unqualified indorsement, was held to have facilitated the forgery, and the drawee bank which sued allowed to recover, the court holding that the case presented ''an interesting exception to the case of *Price v. Neal.*'' That case, however, has been

severely criticized as based upon a fallacy (Brannan's Negotiable Instruments Law, 4th ed., p. 556; 56 American Law Register (N. S.) now U. of P. Law Review, 122; 17 Harvard Law Review 581 to 583), and apparently it has not met with the approval of the highest court of the State of New York. *Title Guarantee & Trust Co. v. Haven,* 214 N. Y. 468, 108 N. E. 819.

We hold that the law as announced in *Price v. Neal* is the law of this State.

Plaintiff argues, however, that this rule is not applicable to the facts which here appear, because, in the first place, as it is said, plaintiff did not itself pay the check, and because, in the second place, defendant was guilty of negligence in the matter.

There is an apparent distinction between the cases cited and the instant case in this respect, and although a wealth of authority has been cited by each of the parties to this controversy, our attention has not been called to any case which is not distinguishable in this respect. We are, however, not inclined to think that the distinction is material or that plaintiff is in a position to urge the point. In the first place, as defendant points out, if plaintiff has not paid the check it seems to have no basis whatsoever for its suit. If it has not paid the check it has not been damaged because defendant has not obtained plaintiff's money. The theory upon which plaintiff sues appears to be that it has in fact paid the check through the bank and that defendant has received the money which in equity and good conscience belongs to plaintiff. It certainly cannot maintain its suit upon entirely inconsistent theories, urging on the one hand that it has not paid the check and on the other that it has paid it and should be reimbursed for the amount paid. If it has ratified the payment of the check by the bank, it is certainly in no better position than the bank would be. Indeed, it would not seem unreasonable to hold that by

its retention of the check it has at least acquiesced in, if not approved, the payment thereof by the bank.

Moreover, the uncontradicted evidence tends to show that plaintiff received the check and still holds it, having neither returned nor offered to return it either to the drawee bank or to defendant. The public interest would seem to require that the good faith holders of negotiable instruments should not be subjected to hazards such as would be put upon them by the rule for which plaintiff contends.

That plaintiff was grossly negligent clearly appears from the evidence which was admitted, and the court excluded evidence which tended to show greater negligence. As against the bank, by virtue of the act approved June 27, 1921 (see Cahill's St. ch. 16a, ¶ 24; Smith-Hurd's Ill. Rev. Stat. 1929, chap. 16½, sec. 24, p. 209), plaintiff was precluded from maintaining a suit, and independently of that statute, its negligent conduct was such as to preclude its recovery in any suit which it might have brought against the bank. *Osborn v. Corn Exchange Nat. Bank,* 218 Ill. App. 28; *Kaszab v. Greenebaum Sons Bank & Trust Co.,* 252 Ill. App. 107; 24 Columbia Law Review, pp. 469–479.

If plaintiff could not recover against the drawee bank, much less can it recover against defendant, a holder in good faith for value.

The rulings of the trial court upon propositions of law indicate that in the opinion of the trial court such negligence was wholly immaterial, and in support of that contention plaintiff cites *Wizard Oil Co. v. United States Express Co.,* 265 Ill. 156; *Gustin-Bacon Mfg. Co. v. First Nat. Bank,* 306 Ill. 179, and *Independent Oil Men's Ass'n v. Fort Dearborn Nat. Bank,* 311 Ill. 278. These cases are not controlling.

In the first place, these cases do not purport to construe the Negotiable Instruments Act, and in the second place, they are all distinguishable by the fact that

in those cases the name of the payee, not that of the drawer, was forged. For that reason the defendants in those cases became liable to the true owners for the conversion of the checks, and defendants being so liable it of course followed that the true owners might waive the tort and sue in assumpsit as for money had and received, and that therefore the negligence of the owners of the checks would be immaterial, as those cases hold.

As to the contention of plaintiff that defendant here was negligent, we have read the record carefully but fail to find therein any facts from which such negligence can be inferred. It has been suggested in this connection that an inference of negligence might be drawn from the language on the check to the effect that the payee in indorsing the same acknowledged payment in full of account No. 10125. There is no proof in the record showing what this account covered. Whatever the account number may have referred to, it seems to have aroused no suspicion on the part of plaintiff nor of the bank which paid the check. The number was, of course, on the check when it was paid by the drawee bank and when the check was returned by that bank to plaintiff. As defendant points out, if negligence is to be attributed to it because of failure to investigate and discover that the check was a forgery or to ascertain the meaning of ''account No. 10125,'' much greater must have been the negligence attributable to plaintiff and to the bank in this respect. The evidence as to account No. 10125 was in the possession of plaintiff, but it was not produced.

In a suit like this, for money had and received, the appeal is to the conscience of the court. The rule announced in *Price v. Neal* is undoubtedly an exception to the general rule that money paid under a mistake of fact can be recovered. In cases to which that exception is applicable, it would seem reasonable to hold that the negligence of a plaintiff, as well as the negli-

gence of a defendant, is material. In such an action as already stated, a plaintiff may recover from a defendant only that which in equity and good conscience a defendant ought not to retain as against the plaintiff. In such a case the question of the negligence of plaintiff is important and material. The court therefore erred in holding that plaintiff could maintain an action for money had and received and that plaintiff's negligence was no defense to the action. The equities of this case are all with the defendant.

The court also erred in excluding the evidence tending to show that plaintiff was further negligent. However, we hold that upon the uncontradicted evidence plaintiff cannot recover, and the judgment of the trial court is therefore reversed with a finding of facts and judgment here in favor of defendant.

*Reversed with finding of facts and judgment here for defendant.*

O'CONNOR and McSURELY, JJ., concur.

Finding of facts: We find as facts in this case that defendant, Pennsylvania Railroad Company, took the check of plaintiff in the usual course of business and for value; that it was not negligent in said transaction; that on the uncontradicted evidence plaintiff is guilty of negligence which precludes recovery, and that on the undisputed facts plaintiff cannot maintain an action against defendant for money had and received; that judgment should be entered in this court in favor of defendant and against plaintiff for costs.