Central National Bank in Chicago, Appellee, v. Avenue State Bank, Appellant.

Gen. No. 43,944.

Opinion filed November 19, 1947. Rehearing denied December 23, 1947. Released for publication December 24, 1947.

LORD, BISSELL & KADYK, of Chicago, for appellant; NEWELL S. BOARDMAN and HAROLD E. BAILY, both of Chicago, of counsel.

WEISSENBACH, HARTMAN, CRAIG & OKIN, of Chicago, for appellee; HARRY OKIN and CECIL E. MAGID, both of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

In a complaint filed in the circuit court of Cook county by the Central National Bank in Chicago against the Avenue State Bank, plaintiff averred that two checks (one dated August 22, 1945 and the other August 30, 1945) were drawn on plaintiff by W. T. Hawkins, its depositor, payable to the order of Marjorie H. Hawkins, each in the sum of $1,000, each of which bore the endorsement "for deposit only, Marjorie H. Hawkins," and which were presented to plaintiff by the defendant; that the checks were endorsed by the defendant and payment thereof made by plaintiff to defendant; that W. T. Hawkins, the purported drawer of the checks, notified plaintiff that the signatures appearing thereon were forgeries, whereupon plaintiff "promptly notified defendant thereof"; that the signatures of the drawer of the checks were forged; that the payee named in the checks notified plaintiff and defendant that the endorsements appearing on the checks were forgeries; that the endorsements were not made by her and that she did not receive the proceeds of the checks. Plaintiff asked judgment for $2,000.

Defendant filed its motion to dismiss the complaint, setting forth the following grounds: (1) It states no cause of action; (2) It is indefinite and does not set forth with sufficient particularity the date plaintiff allegedly notified defendant of the forgeries described therein; (3) It does not allege that any of the proceeds of the alleged forged checks was in the possession of the defendant on the date plaintiff notified the defendant that the checks were forged; and (4) the drawee, by paying the checks, is estopped from any recovery from the defendant. The court overruled defendant's

motion to dismiss the complaint. Defendant thereupon filed its answer, admitting each and every allegation of the complaint and alleging in paragraph 5 that the checks were received by it through the United States mail and credited to the account of the payee therein named; that plaintiff did not notify the defendant that each of the checks bore forged signatures of the maker until October 6, 1945; that prior to this date defendant had paid out all of the proceeds of the two forged checks and had none of the proceeds of the checks in its possession; that without any negligence on defendant's part, it credited the account of the payee named in the checks; that by virtue of the payment of the proceeds of the checks, defendant received the $2,000 from plaintiff in good faith, in the usual course of business and for a valuable consideration; and that the defendant received the monies in good faith, in the usual course of business and for a valuable consideration in payment of an indebtedness owing to it.

Plaintiff filed its motion to strike defendant's answer and for judgment on the grounds that ·(1) the answer does not state a defense; (2) that defendant admits all the allegations of the complaint; (3) that the matters and things alleged in paragraph 5 of the answer do not constitute a defense to plaintiff's cause of action and are irrelevant and immaterial; and (4) that the matters and things alleged in paragraph 5 of the answer were disposed of by the order overruling defendant's motion to strike plaintiff's complaint. The court sustained plaintiff's motion to strike paragraph 5 of the answer. Upon the defendant electing to abide by its answer, judgment was entered in favor of plaintiff and against defendant for $2,000. Defendant appealed.

In *First State Bank & Trust Co. v. First Nat. Bank of Canton,* 314 Ill. 269, our Supreme Court stated the law applicable to the factual situation in the case at bar as follows (272):

"The rule generally accepted is that, as between equally innocent persons, the drawee who pays money on a check or draft the signature to which was forged cannot recover the money from the one who received it. (*Price v. Neal*, 3 Burr. 1354; *First Nat. Bank of Quincy v. Ricker*, 71 Ill. 439; *United States v. Bank of New York*, 219 Fed. 648; *Dedham Nat. Bank v. Everett Nat. Bank*, 177 Mass. 392; 4 Harvard Law Review, 297, 299.) But where the holder of a forged check has not suffered or may avoid loss, he ought not to be permitted to profit by payment to him by the drawee."

Illinois adopted the uniform negotiable instruments law in 1907. In *National City Bank of Chicago v. National Bank of the Republic of Chicago*, 300 Ill. 103, the court said (107):

"In construing the act the language ought to be interpreted in such a way as to give effect to the beneficent design of the legislature in passing an act for the promotion of harmony in the law regarding negotiable paper. . . . If the provisions of the act harmonize with the general principles of commercial law in force before its enactment those principles should be followed, but if the language of the act conflicts with statutes or decisions in force before its enactment the courts should not give the act a strained construction in order to make it harmonize with earlier statutes or decisions. If this is done the very purpose of the act is defeated. In order to keep the law as nearly as may be uniform, the courts of all the States should keep in mind the spirit and object of the law and should give to the language of the act a natural and common construction, so that all might be more likely to come to the same conclusion."

We agree with defendant that the doctrine announced in *Price v. Neal*, 3 Burrow's Reports, 97 Eng. Reprint 871, has been the law of this State since the adoption of the Uniform Negotiable Instruments Act in 1907.

In that case the drawee in two forged bills, one only of which had been accepted prior to payment, sought to recover the monies paid to the parties producing the bills for payment. Both bills had been endorsed to the defendant for a valuable consideration and he acted *bona fide* and without the least suspicion of the forgeries. The forgeries were conceded and the forger was hanged. Plaintiff brought an action upon the case for money had and received to his use. LORD MANSFIELD said:

" . . . the plaintiff can not recover the money, unless it be against conscience in the defendant, to retain it: . . . But it can never be thought *unconscientious* in the defendant, to *retain* this money, when he has once received it upon a bill of exchange indorsed to him for a fair and valuable consideration, which he had *bona fide* paid, without the least privity or suspicion of any forgery. . . . It was incumbent upon the *plaintiff*, to be satisfied 'that the bill drawn upon him *was the drawer's hand*' before he accepted or paid it: . . ."

In *Lewis Mfg. Co. v. Pennsylvania R. Co.*, 258 Ill. App. 216, we said (223):

"The weight of authority seems to be that by the enactment of section 62 it was the intention to adopt the doctrine of *Price v. Neal,* and that said section is applicable to payment or acceptance by the drawee of a forged bill or check."

Defendant argues that if the pleadings be construed to aver that the signatures of the payee were forged so that it can be said that the case involves the combination of forged signatures of the maker and forged endorsements of the payee, the rule of *Price v. Neal* is nonetheless applicable as the additional element of forged signatures of the payee is immaterial and of no significance in the application of the doctrine under the Negotiable Instruments Law. Defendant, citing secs. 23, 51, 52, 65, 66 and 118 of the Negotiable

Instruments Act (pars. 43, 71, 72, 85, 86 and 140, ch. 98, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 89.043, 89.071, 89.072, 89.085, 89.086, 89.140]) asserts that presentment for payment by a cashing bank to the drawee bank does not amount to negotiation, purchase or sale of the instrument; that payment discharges the instrument; that a drawee bank does not come within the terms of a holder in due course; that warranties of endorsers run only in favor of holders in due course; that by virtue of sec. 23 of the Negotiable Instruments Law, an instrument bearing the forged signature of the maker is absolutely void and no action can be brought thereon; that the drawee is in no worse position because of the forged endorsements than without them; that the drawee's position can therefore be no better because of them than without them; and that forged endorsements can add nothing to the rights of the drawee bank seeking to recover monies paid to a cashing bank in payment of forged instruments.

In 4 Harvard Law Review, 297, 302, (cited in 314 Ill. 269) the author states:

"But the attitude of the holder of a bill who presents it for payment is altogether different from that of a vendor. The holder is not a bargainor. By presentment for payment he does not assert, expressly or by implication, that the bill is his or that is it genuine. He, in effect, says 'Here is a bill, which has come to me, calling by its tenor for payment by you. I accordingly present it to you for payment, that I may either get the money, or protest it for non-payment.' Mr. Justice Chambre's statement, that the holder warrants the genuineness of the bill by presenting it, was expressly repudiated by Littledale and Bayley, J. J., in *E. I. Co. v. Tritton*, 1824, 3 B. & C. 289, 290, 291. The notion, that the holder's indorsement of his name on the bill at the time of payment is a warranty of the genuiness of the bill, although not without judicial sanction, should be strenuously resisted. The so-called

indorsement is not an indorsement at all, but simply a receipt of payment.''

In *State Planters Bank & Trust Co. of Richmond, Va. v. Fifth-Third Union Trust Co. of Cincinnati,* 56 Ohio App. 309, 10 N. E. (2d) 935, the court said (941):

''The course of the instrument ends when it reaches the drawee and is paid. It cannot continue in further negotiation. The holder does not negotiate it, for its negotiation ceases. He does not sell it, for the very character changes as it comes into the possession of the drawee, so that, if it could be a sale, the seller would sell one thing and the vendee would receive another. A merchant does not sell an account to his debtor when the debt is paid. The transaction in both cases simply constitutes the extinguishment of an obligation. It has none of the characteristics of a sale.''

The Ohio court said that the drawee is not such a holder in due course as will permit him to recover under secs. 52, 62, 63 or 66 of the Negotiable Instruments Law.

The drawee named in a bill of exchange is bound to know the signature of the drawer, and hence accepts or pays the instrument at his peril. A check is a bill of exchange drawn on a bank payable on demand. A bank is bound to know the signatures of its depositors. The doctrine of *Price v. Neal* is not available to a holder who is guilty of bad faith, or who has been negligent. As between the drawee and a holder, it is the duty of the holder to know the signature of prior endorsers. The drawee does not warrant the genuineness of the signatures of the endorsers if he is not in a position to know their signatures. The consequence of this rule is that if the holder possesses a check having on it the genuine signature of the drawer and the forged signature of the payee or other endorser, and such holder receives payment from the drawee, he must refund to the drawee. When a holder

signs his name on the back of a check and then receives payment from the drawee, his signature is not strictly speaking an endorsement, but it is merely a receipt, although the signature is usually called an endorsement. The liability of the holder to refund when he has received payment on a check coming to him through a forged endorsement is not dependent upon whether or not the holder has signed his name on the back of the check, for regardless of whether or not he endorses the instrument, the holder is bound to know the genuineness of prior endorsements. A holder can sue the drawee and compel payment without endorsing a check. A drawee who has paid a check bearing the drawer's genuine signature and a forged endorsement can sue the holder and compel repayment, even though the holder did not endorse the check.

Although all the authorities agree that the drawee has a right to compel the holder to refund money paid on a check having the genuine signature of the drawer, but bearing a forged endorsement, they do not agree upon the theory of the obligation which creates the right. The warranty of the drawee in respect of the signature of the drawer is governed by a rule of the law-merchant, while recovery by the drawee of payment made on a forged endorsement is dependent upon common-law rules with reference to recovery of money paid by mistake. *First Nat. Bank v. United States Nat. Bank,* 100 Ore. 264.

Defendant maintains that the complaint does not state a cause of action and that the trial court should have granted its motion to dismiss for failure to allege any equities in plaintiff's favor that would prevent the doctrine of *Price v. Neal* from operating. Plaintiff replies that the defendant waived its right to assign error with respect to the order overruling its motion to dismiss the complaint, for the reason that the defendant failed to abide by its motion and answered over. The parties are in agreement that

by answering, defendant did not waive any innate and substantial defects "which would render the complaint insufficient to sustain the judgment." We agree that there are no allegations in the complaint which would prevent the rule of *Price v. Neal* from operating. There are no allegations that any of the proceeds of the checks were in the possession of the defendant or available as a credit to the defendant at the time the drawee notified defendant that the signatures on the checks were forged, nor are there any allegations that the defendant was negligent in cashing the checks or in not discovering the forgery. There are no allegations showing any equity in the plaintiff superior to that of defendant. *United States v. Chase Nat. Bank,* 252 U. S. 485; *First State Bank & Trust Co. v. First Nat. Bank of Canton,* 314 Ill. 269. We find that failure to make such allegations constituted innate and substantial defects in the complaint. Paragraph 4 of section 45 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 169, subpar. (4); Jones Ill. Stats. Ann. 104.045] provides that upon motions based upon defects in pleadings, substantial defects in prior pleadings may be considered in so far as they are material to the ruling sought. Paragraph 3 of section 42 of the Civil Practice Act [Ill. Rev. Stats. 1945, ch. 110, par. 166, subpar. (3); Jones Ill. Stats. Ann. 104.042] provides that all defects in pleadings, either in form or substance, not objected to in the trial court, shall be deemed to be waived. Prior to the adoption of the Civil Practice Act, it was necessary to make a motion in order to carry the search of the record back. In view of par. 3 of sec. 42 of the Civil Practice Act, it would seem that a party desiring to take advantage of a defect in a prior pleading should in some manner urge the point in the trial court.

Plaintiff maintains that the complaint does not contain any innate or substantial defect, and that by answering over, defendant waived its right to assign

error with respect to the trial court's order overruling its motion to dismiss the complaint. In the complaint plaintiff avers that the signatures of the purported drawer of the checks were forged. It also avers that the purported payee notified plaintiff and defendant that the endorsements were forgeries, that they were not made by the payee, and that she did not receive the proceeds of the checks. There is no averment by plaintiff that the endorsements of the payee are forgeries, or that she did not receive the proceeds of the checks. Assuming that the complaint avers that the endorsements of the payee's name were forgeries and that she did not receive the proceeds of the checks, we are of the opinion that the endorsements of payee's signature on the checks would not affect plaintiff's liability. The checks were deposited to the credit of the payee. Assuming, *arguendo,* that the complaint alleges that the payee "did not receive the proceeds" of the checks, we are also of the opinion that such an averment does not show that the credit represented by the checks was, at the time defendant was notified of the forgeries, available to it so that at that time it had not suffered or could avoid loss, as held in *First State Bank & Trust Co., supra;* nor does the complaint allege that the holder (defendant) was guilty of bad faith or had been negligent. The defects in the complaint were "innate and substantial" and the court should have carried plaintiff's motion to strike paragraph 5 of defendant's answer back to the complaint and sustained defendant's motion theretofore made to strike the complaint.

Plaintiff insists that the facts alleged in the complaint, and specifically admitted in the answer, show all of the equities to be with plaintiff and sustain plaintiff's right to recover. It argues that the complaint shows that the defendant had the first and last opportunity, and therefore the duty, to avoid loss. In every *Price v. Neal* case the defendant has the first opportunity to prevent loss. The complaint does not

set out any allegations showing that the defendant had the last opportunity to prevent loss. Plaintiff's case apparently is based on the theory that the proceeds of the two checks were in the control or possession of the defendant at the time plaintiff gave it notice of the forgery, so that the defendant was in a position to return the proceeds, or part of them, to plaintiff without loss to itself. As we have stated, the complaint does not contain any allegations showing that the proceeds of the checks were available to the defendant at the time it was notified of the forgery. Paragraph 5 of the answer avers that without any negligence on its part, defendant credited to the account of the payee the amount of the two forged checks, and that prior to October 6, 1945, when it was notified of the forged signatures of the maker, it had paid out all of the proceeds of the two forged checks and had none of the proceeds of the checks in its possession. We assume that the payment referred to by the defendant was to a person or persons other than the payee. The payee would not be entitled to receive any of the proceeds of the forged checks. Whether the person or persons who forged the signatures of the maker committed other forgeries in order to reach the $2,000 so credited to Marjorie H. Hawkins, does not appear from the pleadings. It does not appear that the defendant paid the proceeds of the two checks under any authorization from its depositor, Marjorie H. Hawkins.

In the cases we have read on this subject, the proceeds were paid to someone other than the payee. In most of these cases the holder (defendant) gave the proceeds of the check to the forger, while in the case at bar the proceeds of the forged checks were placed to the credit of the payee, who was defendant's depositor. We agree with defendant that the fact that the proceeds of the forged checks were deposited to the credit of the payee in defendant's bank, does not injure the plaintiff and can give the plaintiff no greater rights, unless the credit represented by the

deposit, or some part of it, is in the cashing bank (defendant) at the time it receives notice of the forgery. If the defendant paid out the proceeds to someone other than Marjorie H. Hawkins, to whose account they were credited, she is the only one who could complain. Plaintiff does not represent her. As the drawer's signatures were forged, Marjorie H. Hawkins had no interest in the proceeds. Assuming that the defendant in good faith paid to the forger the amount of the checks credited to the account of Marjorie H. Hawkins before it was notified of the forgery, we are of the opinion that plaintiff could not recover.

Plaintiff supports its argument by citing *National Bank of the Republic v. Kaspar American State Bank,* 369 Ill. 34. This case involved forged endorsements on valid paper. The right of the maker and the drawee bank under proper circumstances to recover from the cashing bank monies improperly paid out on valid instruments bearing forged endorsements of the payee, has never been questioned by the courts of this State. Plaintiff also cites *Cosmopolitan State Bank v. Lake Shore Trust & Savings Bank,* 343 Ill. 347, to the effect that warranties of endorsers run to the drawee bank. This case involved valid paper bearing a forged endorsement. All of the cases recognize that the drawee bank may recover in this situation. Almost all state that the proper theory is money paid under a mistake.

The endorsement of the checks by defendant was for collection and did not transfer the title to the plaintiff. *National Bank of Rolla v. First Nat. Bank of Salem,* 141 Mo. App. 719, 125 S. W. 513, 516; *First Nat. Bank v. United States Nat. Bank,* 100 Ore. 264, 197 Pac. 547.

For the reasons stated, the judgment of the circuit court of Cook county is reversed and the cause remanded with directions to proceed in a manner not inconsistent with the views expressed.

*Judgment reversed and cause remanded with directions.*

LEWE, P. J., and KILEY, J., concur.