THIRD DIVISION

June 25, 2003

No. 1-01-4233

CLEAN WORLD ENGINEERING, LTD.,   )

   )
 Appeal from the

Plaintiff-Appellee,
   )
 Circuit Court of

v.
   ) Cook County.

   )

MIDAMERICA BANK, FSB, f/k/a MIDAMERICA   )

FEDERAL SAVINGS BANK, and ROBERT
 C.   )

LANDRUM,   )

Defendants-Appellants. 
   )

-----------------------------------------------------------
   ) 

MIDAMERICA BANK, FSB,
   )

   )

Third-Party Plaintiff-Appellant,
   )
 Honorable

v.   )
 Lee Preston,

   )
 Judge Presiding.

TCF BANK ILLINOIS, an Illinois banking   )

institution,   )

Third Party Defendant-Appellee.   )

PRESIDING JUSTICE SOUTH delivered the opinion of the court:

Defendant, third-party plaintiff, MidAmerica Bank, FSB (MidAmerica), appeals from two orders entered by the circuit court of Cook County following a bench trial.  The first order was a judgment in favor of plaintiff, Clean World Engineering (Clean World), and against MidAmerica following a bench trial.  The second order granted third-party defendant's, TCF Bank Illinois (TCF), motion for reconsideration of the court's prior order denying its motion for summary judgment as to count I of MidAmerica's third-party complaint and granting TCF's motion for summary judgment against MidAmerica.  

Count I of Clean World's complaint, which was directed against MidAmerica, alleged that it violated section 4-401 of the Illinois Uniform Commercial Code (810 ILCS 5/4-401 (West 2000))
 by unlawfully charging its account for items (forged checks) that were not properly payable.  MidAmerica filed an amended third-party complaint against TCF Bank Illinois.  Count I alleged that TCF breached its presentment warranties to MidAmerica pursuant to sections 3-417 and 4-208 of the Illinois Uniform Commercial Code (810 ILCS 5/3-417, 4-208 (West 2000))
 when it presented the forged checks for collection.  Count II of the complaint alleged a breach of the transfer warranties when MidAmerica paid TCF on checks that were presented to it for payment when those checks were not authorized, and that TCF was not entitled to enforce the draft or obtain payment in violation of sections 3-417(a)(1) and 4-208(a)(1) of the Illinois Uniform Commercial
 Code (810 ILCS 5/3-417(a)(1), 4-208(a)(1) (West 2000))
.  Count II is not a subject of this appeal.  

The pertinent facts as adduced at trial are as follows:  Clean World is an environmental engineering company specializing in providing pollution control services to government and industrial clients.  Rita Kapur is Clean World's president, Victor
 Bhatia is its senior vice president, and Terri Schulz is its office manager.  

On June 22, 1997, Nicholas Fredich 
placed an ad in the Denver Post classified section seeking applicants for a fictitious bookkeeping position.  He used one of the resumes solicited by this ad in order to obtain a date of birth and social security number of "Robert C. Landrum" whose identity and accounting background he assumed in order to apply for a bookkeeping position with Clean World.  He and Mario Carasco created a company called Vichor Corporation and opened a bank account for that company at TCF Bank.  Fredich intended to use blank checks from Clean World's checking account with MidAmerica to make deposits into Vichor's account at TCF and then withdraw those funds from that account for his personal use.  

Kapur, in her capacity as president of Clean World, interviewed Fredich posing as Landrum for a bookkeeper's position with Clean World. 
 She reviewed his application, checked his references, and obtained a credit report using the social security number that he had provided.  She also called "Landrum's" prior employer, Mario Carasco, who reportedly was the president of Mid-Continental Investment.  Carasco gave Kapur a very favorable recommendation of "Landrum."

Schulz, in her capacity as Clean World's office manager, conducted a credit check on "Landrum."  Based upon the favorable background and credit checks, 
Kapur extended an offer of employment to "Landrum," and he began working at Clean World on September 2, 1997, as a bookkeeper.
  

On Wednesday, September 17, 1997, "Landrum" left work early because he claimed he had received an emergency phone call that his mother-in-law had just died.  Later, Kapur left a message on his home answering machine, expressing her condolences for his loss and requesting that he inform her as to when he would be returning to work.  "Landrum" called Kapur back on Thursday, September 18, 1997, stating that he needed a couple of days off but would return to work on Saturday.   Kapur told him that he could come back to work on Monday.  

On Monday, September 22, 1997, after "Landrum" failed to show up for work, Kapur asked Schulz whether he had called in and said he was going to be late.  Schulz did not have any information because she had not spoken to or received a message from him.  Kapur
 and Schulz 
made several calls to "Landrum's" home and each time received a recorded message requesting a mail code.  Kapur attempted to call Carasco to determine if "Landrum" had gone back to work for him, but she only reached an 
answering service.  

By this time 
Kapur was becoming suspicious of "Landrum," so she checked her office to determine if anything was missing.  She unlocked the file cabinet and with Schulz's assistance discovered that some checks were missing.  She
 immediately informed Bhatia, and the two of them met with MidAmerica's manager, Kathy Filafusi, who informed them that the missing checks had already been processed by the bank, and that deposits had been made into other accounts of which Kapur and Bhatia had no knowledge. Kapur and Bhatia immediately filed a report with the local police. 

A total of $137,445.02 had been taken from Clean World's account at MidAmerica.  MidAmerica recovered $85,516.82 on behalf of Clean World but refused to credit Clean World's account for the remaining $51,928.20, which included three checks totaling $31,900.20 and a wire transfer in the amount of $20,020.  Those checks were as follows:  Check number 5150 payable to Vichor Company in the amount of $21,326.52 and presented to TCF for deposit on September 10, 1997; check number 5244 also payable to Vichor Company in the amount of $10,139.39 and presented to TCF for deposit on September 10, 1997; check number 5245 in the amount of $442.29 payable to Ameritech; and check number 5171 which evidenced a wire transfer in the amount of $20,020. 

Clean World's bank account with MidAmerica listed Bhatia and Kapur as the only two signatories, and a
ll of the 
checks purportedly bore Bhatia's signature.  
Bhatia later determined that the signatures on the missing checks and the unauthorized wire transfer application had been forged.  Fredich was ultimately arrested and prosecuted for his crimes and pled guilty to the forgeries in the United States District Court for the Northern District of Illinois.  

At the close of the evidence, the trial court found in favor of Clean World and awarded it $41,485.91.  MidAmerica then filed a motion for reconsideration.

On the third-party complaint, TCF filed a motion for summary judgment prior to trial, 
 arguing that it was not in breach of its presentment warranty to MidAmerica because there was no evidence that TCF knew that the drawer's signatures on the drafts were unauthorized or forged.  MidAmerica filed its response, stating that it was not required to prove knowledge, and that TCF bore the burden of establishing the validity of the drawer's signature.  The court granted TCF's motion as to count II, the transfer warranties, and granted MidAmerica's cross-motion for summary judgment as to count I, the presentment warranties, and awarded it $31,465.91 for the two forged checks deposited with TCF.  TCF subsequently filed a motion for reconsideration.  

At the conclusion of the trial on Clean World's complaint against MidAmerica, the trial court granted TCF's motion for reconsideration as to count I, the presentment warranties, and denied MidAmerica's motion to reconsider the judgment in favor of Clean World.  

MidAmerica has raised two issues for our consideration: (1) whether the circuit court erred in entering judgment in favor of Clean World and against MidAmerica; and (2) whether the circuit court erred in granting summary judgment in favor of TCF on MidAmerica's third-party complaint.  

Initially, MidAmerica argues that the trial court's judgment in favor of Clean World was against the manifest weight of the evidence
 because that evidence demonstrated that Clean World's negligence substantially contributed to the forged signatures.  MidAmerica points to Fredich's deposition, which was entered into evidence at trial.  Fredich testified that while he was working at Clean World as "Landrum," he was given full and complete access to the checks and payroll records, all of which were kept in Kapur's office.  According to his testimony,  while Kapur did, in fact, lock her office door at the end of the day, the credenza where she kept the checks was never locked.  Kapur told him that he could take blank checks from that credenza as he needed them.  Fredich also testified that he had access to the accounting computer program that was used for printing checks, and that the computer system did not have security passwords to prohibit his access to that system.   According to Fredich, Clean World did not have a policy with respect to the safeguarding and security of its checking account.  

MidAmerica maintains that Fredich's testimony proves that Clean World was negligent in maintaining its checks and computer system, and that such negligence substantially contributed to the forgeries.  MidAmerica also maintains that Fredich's testimony is substantially corroborated by the fact that he as a new employee who was only on the job a few days was able to obtain access to the company checks and computer system with relative ease.  

A reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the fact finder.  
Bazydlo v. Volant
, 164 Ill. 2d 207, 214 (1995).  The trial judge, as the trier of fact, is in a position superior to a reviewing court to observe witnesses while testifying, to judge their credibility, and to determine the weight their testimony should receive.  
In re Application of the
 
County Treasurer
, 131 Ill. 2d 541, 549 (1989).  Consequently, where the testimony is conflicting in a bench trial, the court's findings will not be disturbed unless they are against the manifest weight of the evidence.  
Green v. City of Chicago
, 73 Ill. 2d 100, 110 (1978).  A trial court's judgment is against the manifest weight of the evidence when its findings appear to be unreasonable, arbitrary, or not based on the evidence.  
Wildman, Harrold, Allen & Dixon v. Gaylor
, 317 Ill. App. 3d 590, 599 (2000).  A trial judge's conclusions on factual issues are entitled to the same weight as a jury verdict.  
Wildman
, 317 Ill. App. 3d at 597.  

The Illinois Uniform Commercial Code (Code) addresses the liabilities of parties in the type of  situation we have here.  Section 3-406 of the Code provides in pertinent part:

"(a) A person whose failure to exercise ordinary care substantially contributes to *** the making of a forged signature on an instrument is precluded from asserting *** the forgery against a person who, in good faith, pays the instrument or takes it for  value or for collection."  810 ILCS 5/3-406 (West 2000).  

In 
Chicago Heights Currency Exchange, Inc. v. Par Steel Products & Service Co.
, 123 Ill. App. 3d 1054 (1984), one of the defendants, the general manager of Par Steel, was authorized to sign checks on the company checking account.  After his employment was terminated and his authority to sign the company checks was cancelled, he signed and delivered two checks drawn on the company account.  The plaintiff cashed the checks.  When those checks were presented to the drawee bank for payment, they were returned marked unpaid.  The plaintiff brought the action against defendant and Par Steel, alleging that Par Steel's failure to notify the plaintiff that defendant's authority to sign checks had been withdrawn and that defendant possessed checks that he could no longer sign constituted negligence.  
Chicago Heights Currency Exchange
, 123 Ill App. 3d at 1054-55.  Par Steel asserted section 3-406 of the Code as a defense.  This court held that the evidence in the record did not establish that Par Steel's actions constituted negligence that substantially contributed to the making of the unauthorized signatures.  
Chicago Heights Currency Exchange
, 123 Ill. App. 3d at 1056.  The court stated:

" '[T]he meaning of sec. 3-406 is best reflected by precluding a drawer from recovery under these or similar circumstances only  where his negligent conduct contributes to the forgery, not merely  to the unwarranted issuance of the checks ***."  (Emphasis omitted.)  
Chicago Heights Currency Exchange
, 123 Ill. App. 3d at 1056, quoting 
Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc
., 491 F.2d 192, 197 (8
th Cir. 1974).  

In order to prevail in the case at bar, MidAmerica was required to prove that Clean World's negligence substantially contributed to the forgery.  At the close of the evidence, the trial court held that nothing Clean World did contributed to the forgeries.  In its written order, the court referred to the testimonies of Bhatia, Kapur and Schulz as to how they safeguarded their checks in order to protect the security of those checks.  Specifically, the court referred to Kapur's testimony that the checks were always maintained in a file cabinet in her office, and that the cabinet was locked most of the time when its contents were not being used; that the office in which the file cabinet was located was locked whenever she was out of the office; and that the key to the file cabinet was kept in her desk, which was locked whenever she was out of the office.  The court found that all of plaintiff's witnesses, including Kapur, were credible and was convinced by a preponderance of the evidence that Clean World took reasonable steps to safeguard the security of its checks which were ultimately misappropriated by "Landrum."  The court also found that plaintiff conducted a reasonable and thorough inquiry into "Landrum's" background before hiring him.  

As to Fredich's testimony that plaintiff did not take reasonable measures to safeguard its checks, the court did not find him to be a credible witness because he was a convicted felon who had led a life of crime for several years before securing a job at Clean World and had admittedly stolen plaintiff's checks in an elaborate scheme to defraud it.  In short, the court concluded that "an innocent employer *** was simply no match for an experienced, professional scam artist like Mr. Landrum."  

Based upon our review of the record, we find there was sufficient evidence upon which the court could conclude that there was no negligence on the part of Clean World which substantially contributed to the making of the forged signatures.
  The record is clear that Clean World took every precaution to maintain the security of its checks by keeping them in a locked file cabinet in Kapur's office.  Although Kapur testified that the cabinet was unlocked when she was in her office, she locked it and kept the key in her locked desk whenever she left her office.  The court was convinced by a preponderance of the evidence that whatever security measures the company would have undertaken, "Landrum" would have devised a way to circumvent them in order to follow through on his fraudulent scheme.   We do not find that the judgment was against the manifest weight of the evidence, and, therefore, shall not disturb that judgment.  

MidAmerica next contends that the court erred in granting TCF's motion for summary judgment on count I of its third-party complaint.  A reviewing court conducts a 
de novo
 review of the evidence in summary judgment cases.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995).  The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party.  
Espinoza
, 165 Ill. 2d at 113.  Where the pleadings, depositions and affidavits shows that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law.  
First of America Trust Co. v. First Illini Bancorp, Inc.
, 289 Ill. App. 3d 276, 283 (1997).  

To support its contention that the grant of summary judgment to TCF was error, MidAmerica maintains that TCF breached the presentment warranties when it sought and received payment from MidAmerica on the two forged checks, and that it was not required to prove that TCF had knowledge of those forgeries because knowledge is irrelevant to a finding of a breach of presentment of warranties.  TCF responds that MidAmerica was, in fact, required to prove such knowledge, and that there was no evidence establishing that it, TCF, knew that the signature of the purported drawer of the draft was unauthorized or forged.  

This issue is governed by the Code's sections dealing with presentment warranties:  section 3-417, which addresses negotiable instruments; and section 4-208, which addresses bank deposits and collections.  810 ILCS 5/3-417, 5/4-208 (West 2000).  Section 3-417 of the Code, Presentment Warranties, provides in pertinent part: 

"(a) If an unaccepted draft is presented to the drawee for

payment or acceptance and the drawee pays or accepts the

draft, (i) the person obtaining payment or acceptance, at the

time of presentment, and (ii) a previous transferor of the draft,

at the time of transfer, warrant to the drawee making payment

or accepting the draft in good faith that:

(1) the warrantor is or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft;   

(2) the draft has not been altered; and

(3) the warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized."  810 ILCS 5/3-417(a) (West 2000).

See also 810 ILCS 5/4-208(a) (West 2000) (substantially similar to section 3-417(a)).  

Subsection (a)(3) retains the rule first announced in 
Price v. Neal
, 3 Burrows Rep. 1354, 97 Eng. 871 (1762), namely, that a drawee takes the risk that the drawer's signature is unauthorized unless the person presenting the draft has knowledge that the drawer's signature is unauthorized.  810 ILCS Ann. 5/3-417, Uniform Commercial Code Comment - - 1992, at 261 (Smith-Hurd 1993).   

In that case, the drawee in two forged bills, only 
one of which had been accepted prior to payment, sought to recover the monies paid to the parties producing the bills for payment.  Both bills had been endorsed to the defendant for a valuable consideration, and he acted without the least suspicion of the forgeries.  The forgeries were conceded, and the forger was hanged.  Plaintiff brought an action for recovery of that money.  Lord Mansfield in his written opinion said:  "[T]he plaintiff can not recover the money, unless it be against conscience in the defendant, to retain it ***.  But it can never be thought unconscientious in the defendant, to retain this money, when he has once received it upon a bill of exchange indorsed to him for a fair and valuable consideration, which he had bona fide paid, without the least privity or suspicion of any forgery.   It was incumbent upon the plaintiff, to be satisfied 'that the bill drawn upon him was the drawer's hand' before he accepted or paid it."  
Price
, 3 Burrows Rep. at 1357, 97 Eng. at 872.

The rule in 
Price
 has been generally accepted by the courts in this country and has been followed in Illinois since as far back as 1874.  See 
First National Bank of Quincy v. Ricker
, 71 Ill. 439 (1874) (the drawee of a bank check is presumed to know the signature of the drawer; if the drawee pays a forged check to the holder, he will not be entitled to recover the money so paid, where there has been fraud practiced upon him).  Moreover, it is generally stated that the rule announced in 
Price
 states the law applicable in those states that adopted "an act in regard to negotiable instruments ***" (Negotiable Instruments Law) (Ill. Rev. Stat. 1908, ch. 98, par. 19 
et seq
.).  That act was adopted by the State of Illinois in 1907.  Ill. Rev. Stat. 1908, ch. 98, par. 19 
et seq
.
  See also 
F.J. Lewis Manufacturing Co. v. Pennsylvania Railroad Co.
, 258 Ill. App. 216, 222 (1930).   

Section 23 of the 1907 Act provided as follows:

"Where a signature is forged or made without authority, it is wholly inoperative, and no right to retain the instrument or to give a discharge thereof, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."  Ill. Rev. Stat. 1908, ch. 98, par. 41. 

Section 62 of that act provided as follows:

"The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance, and admits:

1. The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and

2. The existence of the payee and his then capacity to indorse."  Ill. Rev. Stat. 1908, ch. 98, par. 80.

The weight of authority indicates that the enactment of section 62 was the intention to adopt the doctrine of 
Price
, and that said section is applicable to payment or acceptance by the drawee of a forged bill or check.  
Lewis Manufacturing Co.
, 258 Ill. App. at 223.  The court in that case also held that the law as announced in 
Price
 was the law of this state.  
Lewis Manufacturing Co.
, 258 Ill. App. at 223.  

It is thus clear that the doctrine of 
Price
 has long been the law within this state.  
  
  

Applying the 
Price
 rule to the instant case, 
the record establishes that "Landrum" opened a bank account for his fictitious company, Vichor Corporation, at TCF Bank with the specific purpose to deposit Clean World's forged checks into that account.  Two checks, No. 5150 in the amount of $21,326.52, and No. 5244 in the amount of $10,139.39, both made payable to Vichor, were presented to TCF for deposit on September 10, 1997.  In reviewing the record, we find no evidence from which it could reasonably be inferred that TCF knew that the signatures on those checks were forged.  

MidAmerica, however, argues that TCF's knowledge of the forgery is irrelevant to a finding of a breach of presentment of warranties, and relies on this court's decision in 
First National Bank of Chicago v. MidAmerica Federal Savings Bank
, 303 Ill. App. 3d 175 (1999) as support for that contention.  We find that MidAmerica's reliance on 
First National
 is misplaced because that case involves a forged endorsement rather than a forged drawer's signature.  
First National
, 303 Ill. App. 3d at 182.  In that case, this court held that the burden is "directly upon the first bank in the collection chain to make sure that the endorsements are valid."  
First National
, 303 Ill. App. 3d at 182.  The court's rationale behind that holding was that the first bank was in a better position to insure that it is taking the item from someone with good title, and is presumed to have had the best opportunity to have prevented the loss.  
First National
, 303 Ill. App. 3d at 182.  

That situation, however, is not 
the one with which we are faced in the instant case.  Here, TCF was presented with checks which contained a forged drawer's signature from an account at MidAmerica.  Those checks were subsequently presented to MidAmerica for payment, and funds were then released from Clean World's account to honor the checks.  When it initially denied TCF's motion for summary judgment, 
the trial court relied on 
First National
 and found that TCF breached its presentment warranty to MidAmerica, and that MidAmerica was not required to prove that TCF had knowledge that the signatures on the stolen checks were unauthorized.  Upon reconsideration of that motion, the court concluded that it had erroneously relied upon 
First National
, and 
acknowledged that it should have relied upon section 3-417(a) of the Code pertaining to a forged
 drawer's signature
 rather than section 3-417(c), which pertains to unauthorized 
endorsements
. 
  We find that the trial court was correct in making that distinction because this issue surrounds the forged drawer's signature. 

Under sections 3-417(a)(3) and 4-208(a) of the Code, which apply to unauthorized drawers' signatures, in order for the warrantor, in this case TCF, to be in breach of its presentment warranty, it must have knowledge that the signature of the drawer is unauthorized.  810 ILCS 5/3-417(a)(3), 4-208(a)(3) (West 2000).  Inasmuch as no evidence was ever presented that TCF knew that the signature of the drawer, Bhatia, was unauthorized, it could not have been in breach of its presentment warranty.  Some evidence of TCF's knowledge of the forged signatures was required; however, MidAmerica did not present such evidence.  The trial court was correct in its assessment that the applicable statute was section 3-417(a) rather than section 3-417(c), and that, therefore, MidAmerica was required to prove TCF's knowledge of the unauthorized drawer's signatures, which it failed to do.  For that reason, we conclude that the trial court correctly granted TCF's motions for reconsideration and summary judgment.  

Lastly, TCF has asked us to determine that this appeal is frivolous and to impose sanctions upon MidAmerica and its attorneys.  A frivolous appeal is one that is not reasonably well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law.  155 Ill. 2d R. 375(b); 
Gunthorp v. Golan
, 184 Ill. 2d 432, 441 (1998).  

Rule 375(b) sanctions are penal and should be applied only to cases which fall strictly within its terms.  
Beverly v. Reinert
, 239 Ill. App. 3d 91, 101 (1992).  We find that MidAmerica has made a good-faith argument based upon a reasonable interpretation of the language of the Code, and that its appeal is not frivolous.   For that reason, we decline to impose sanctions.  

Based upon the foregoing analysis, the judgment of the circuit court is affirmed.  

Affirmed.  

HOFFMAN and
 WOLFSON, JJ., concur.