In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-3703

WACHOVIA BANK, N.A.,

*Plaintiff-Appellee*

*v.*

FOSTER BANCSHARES, INC., and FOSTER BANK,

*Defendants-Appellants.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 3914—**James F. Holderman**, *Chief Judge*.

———————

ARGUED MAY 11, 2006—DECIDED JULY 24, 2006

———————

Before POSNER, EASTERBROOK, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. This diversity suit pits two banks (for unexplained reasons, the defendant bank's parent was also joined as a defendant) against each other in a quarrel over liability for a forged or altered check.

A customer of Foster Bank named Choi deposited in her account a check for $133,026 that listed her as the payee. The check had been drawn on Wachovia Bank by a company called MediaEdge that had an account with that bank. Foster presented the check to Wachovia for payment. Wachovia paid Foster and debited MediaEdge's account.

Now as it happened the actual payee of the check as originally issued had not been Choi; it had been a company called CMP Media. When CMP Media told MediaEdge that it had not received the check, an investigation ensued and revealed that Choi had somehow gotten her name substituted for CMP Media on the check she'd deposited with Foster. By the time this was discovered, Choi had withdrawn the money from her account and vanished, while Wachovia had destroyed the paper check that Foster had presented to it for payment. It had done this pursuant to its normal practice, the lawfulness of which is not questioned. It had retained a computer image of the check, but whether the image is of the original check drawn on Wachovia, with an alteration, or a forged check, cannot be determined.

MediaEdge sued Wachovia in New York for the amount of the check. That suit has been stayed pending the outcome of the present suit, in which Wachovia seeks a declaratory judgment that Foster must indemnify it in the event that MediaEdge obtains a favorable judgment in the New York suit. Wachovia's suit is based on the Uniform Commercial Code's "presentment warranty": when a depositary bank, Foster in this case, presents a check for payment by the bank that issued the check, it warrants that the check "has not been altered." UCC §§ 3-417(a)1-2, 4-208(a)1-2; *Clean World Engineering, Ltd. v. MidAmerica Bank, FSB*, 793 N.E.2d 110, 117-18 (Ill. App. 2003); *Wachovia Bank, N.A. v. FRB*, 338 F.3d 318, 321-22 (4th Cir. 2003). The district court granted summary judgment for Wachovia. Foster had impleaded Choi as a third-party defendant but could not serve her because of her disappearance, so the district court dismissed the third-party claim. Foster does not challenge that ruling.

There is a question of appellate jurisdiction, specifically whether the district court's judgment is final. The judg-

ment order states, so far as pertains to that question, merely that Wachovia's "motion for summary judgment . . . is granted" and "judgment is entered in favor of plaintiff against defendant Foster." (Foster Bancshares, the parent, is not mentioned, but the omission was inadvertent; there is nothing pending against it in the district court.) Normally a judgment that merely determines liability and does not specify relief is not a final judgment and so is not appealable under 28 U.S.C. § 1291, the final-decision rule that furnishes the only ground for Foster's appeal. The judgment order that the district court issued does not specify any relief. Nor can relief be calculated mechanically. (If it could be, the judgment would be sufficiently final to be appealable. *Production & Maintenance Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp.*, 954 F.2d 1397, 1401 (7th Cir. 1992); *Vitale v. Latrobe Area Hospital*, 420 F.3d 278, 281 (3d Cir. 2005).) The district judge said in his opinion that "Wachovia is entitled to the $133,026.00 it paid on the check plus appropriate interest, less any reimbursement owed it from MediaEdge." But the judge did not define "appropriate interest"; and the "reimbursement owed [Wachovia] from MediaEdge" cannot yet be calculated—the amount depends on the outcome of the New York suit, which has been stayed.

But we must remember that Wachovia was seeking a declaratory judgment, which is deemed final although it does not specify relief. 28 U.S.C. § 2201(a). The judge mentioned on the first page of his opinion that the bank was seeking such a judgment. He didn't repeat this in the judgment order, but the omission is not critical. *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997); see *Chase Manhattan Mortgage Corp. v. Moore*, 446 F.3d 725, 728 (7th Cir. 2006). That order is most sensibly interpreted as the declaratory judgment that Wachovia sought. What else

could it be? It is clear on the one hand that the judge meant
to enter a final and therefore an appealable judgment, and
on the other hand that he was not intending to issue a
further order, specifying relief. A judgment that declares
rights but does not order relief is appealable under 28 U.S.C.
§ 1291 as, and only as, a declaratory judgment.

As we pointed out in the *Chase Manhattan* case, more-
over, a judgment is final for purposes of appeal when the
district judge is through with the case whether or not he
should be, lest the case be left in limbo—no longer in the
district court, but barred from our court by the final-deci-
sion rule. 446 F.3d at 726-27; see also *Moreau v. Harris
County*, 158 F.3d 241, 244 (5th Cir. 1998). Not one but two
cases would be in limbo, because MediaEdge's suit in
New York has been stayed pending the resolution of the
present case. The two suits would be Alphonse and Gaston.

Ordinarily if a district court mistakenly abandoned a
case after finding liability but before ordering relief, the
plaintiff would appeal. But in the present case the plaintiff,
Wachovia, got everything it asked for in the judgment that
the district court entered. The aggrieved party is Foster,
since the judgment declares its liability to Wachovia. If
it cannot appeal, the parties' dispute cannot be resolved—
which provides the clinching argument for deeming the
judgment a declaratory judgment. Even if the judge didn't
think he'd washed his hands of the case, he could not
proceed to award relief because the amount of reimburse-
ment owed Wachovia by MediaEdge cannot be resolved
until the New York suit resumes.

So we have jurisdiction of Foster's appeal and can turn
to the merits. The bank argues that Wachovia, because it
cannot produce the paper check, cannot prove that the check
was altered. For all we know, rather than the check being

"altered" in the usual sense, Choi used sophisticated copying technology to produce a copy that was identical in every respect to the original check (including the authorized signature by MediaEdge's chief financial officer) except for an undetectable change of the payee's name. Had the original paper check not been destroyed, it could be examined and the examination might reveal whether the check had been forged as just described or the payee's name had been changed by chemical washing of the check or by some other method that utilized rather than replaced the original check.

The bank on which a check is drawn (Wachovia in this case) warrants to the presenting bank that the check is genuine, UCC § 3-418(c); *id.*, Official Comment 1; Henry J. Bailey & Richard B. Hagedorn, *Brady on Bank Checks* § 28.11[1] (2006), hence not forged, while as we know the presenting bank warrants that the check hasn't been altered since its issuance. When checks were inspected by hand, when copying technology was primitive, and when cancelled checks were stored rather than digitized copies alone retained, this allocation of liability was consistent with the sensible economic principle that the duty to avoid a loss should be placed on the party that can prevent the loss at lower cost. *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 743 (7th Cir. 1999); *Edwards v. Honeywell, Inc.*, 50 F.3d 484, 490 (7th Cir. 1995); *National Union Fire Ins. Co. v. Riggs Nat'l Bank*, 5 F.3d 554, 557 (D.C. Cir. 1993) (concurring opinion). Having no dealings with MediaEdge, Foster could not determine at reasonable cost whether, for example, the drawer's signature had been forged. Wachovia might be able to determine this by comparing the signature on the check presented to it for payment with the authorized signature in its files. But Wachovia would have no idea who the intended payee was, while Foster might have reason to

suspect that the person who deposited the check with it was not the intended payee. And it would be in as good a position as Wachovia to spot an alteration on the check.

But this last point assumes that a payee's name would be altered in the old-fashioned way, by whiting out or otherwise physically effacing the name on the paper check. If Choi created a new check, there would be no physical alteration to alert Foster when she deposited the check with the bank. That is why Foster complains that Wachovia's failure to retain the paper check prevents determining how the "alteration" was effected—more precisely, whether it is a case of alteration or of forgery. The fact that MediaEdge acknowledges having issued a check to CMP Media is not conclusive on the question because Choi might have destroyed that check, rather than altering it, and substituted a copy that seemed perfectly genuine, with her name in place of CMP Media.

So the case comes down to whether, in cases of doubt, forgery should be assumed or alteration should be assumed. If the former, Foster wins, and if the latter, Wachovia. It seems to us that the tie should go to the drawer bank, Wachovia. Changing the payee's name is the classic alteration. It can with modern technology be effected by forging a check rather than by altering an original check, but since this *is* a novel method, the presenting bank must do more than merely assert the possibility of it. Granted, it is the duty of the drawee bank to take reasonable measures to prevent the forging of its checks, as by marking them in a way that a forger could not discover and therefore duplicate. But Foster has made no effort to show that retention of mountains of paper checks—which would be necessary to determine whether the original check had such a marking—would be a reasonable method of determining whether

the drawee bank or the presenting bank should be liable for the loss.

Nor did Foster make any effort to show—as it might have been able to do, see Henry Bailey & Richard Hagedorn, *supra*, § 28.3—that duplication of the entire check (that is, forgery of the check deposited with the presenting bank), rather than just physical alteration of the payee's name on the original check, has become a common method of bank fraud. Nor did it try to show that banks have, as they are allowed to do, been contracting around the provisions of the UCC relating to the warranties of drawee and presenting banks in cases such as this. Nor did it try to show what Choi's *modus operandi* was, assuming that she had stolen money in this way on other occasions, though such evidence may of course have been unobtainable.

Even if Foster had shown that forgery of the entire check has become a routine method of altering the payee's name, we would not adopt the rule for which it contends, which is that the drawee bank cannot enforce the presentment warranty unless it retains the paper check. The question of which bank was, in the language of economic analysis of law, the "cheaper cost avoider" would still be open. (Maybe neither bank is—which would hardly be a persuasive ground for changing a long-settled rule of law.) A depositary bank can sometimes discover an alteration of the payee's name even when there is no physical alteration in the check presented to the bank for deposit. The size of the check may be a warning flag that induces the bank to delay making funds deposited by the check available for withdrawal. E.g., Bank of America, "Frequently Asked Questions," http://www.bankofamerica.com/deposits/ checksave/index.cfm?template=lc_faq_acct_info (visited July 5, 2006); Kennebunk Savings Bank, "Deposit Account

Agreement," http://www.kennebunksavings.com/ depositagreement.html, (visited July 5, 2006). The check that Choi deposited with Foster was for a hefty $133,000, and there is no evidence that Choi had previously deposited large checks. We do not suggest that Foster was careless in deciding to make the money available for withdrawal when it did. But the uncertainties that the bank has made no effort to dispel counsel against adopting the legal change that it urges. Reform if needed in the light of modern copying technology should be left to the Uniform State Commissioners rather than engineered by a federal court in a diversity case. The judgment for Wachovia is therefore

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*