06-1546-cv
J. Walter Thompson U.S.A., Inc. v. Bank of America Corporation

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: November 8, 2007)                                        Decided: March 4, 2008)

Docket No. 06-1546-cv

J. WALTER THOMPSON, U.S.A., INC.,

    *Plaintiff-Appellee*,

BANK OF AMERICA CORPORATION,

    *Defendant and Third-Party Plaintiff-Appellee*,

    v.

FIRST BANKAMERICANO,

    *Third-Party Defendant-Appellant,*

THE FEDERAL RESERVE BANK OF ATLANTA,

    *Third-Party Defendant-Appellant.*

Before: MCLAUGHLIN, CABRANES, and SACK, *Circuit Judges*.

Drawer of a check, J. Walter Thompson, U.S.A., Inc. ("JWT"), brought an action, arising from a stolen check that was altered and cashed by a person other than the intended payee, against drawee/payor bank, Bank of America ("BoA"), for negligence and violations of BoA's duties pursuant to the Uniform Commercial Code ("U.C.C."). BoA filed a third-party complaint against First BankAmericano and the Federal Reserve Bank of Atlanta, collecting and presenting banks, alleging breaches of the presentment warranties owed to BoA. The United States District Court for the Southern District of New York (Denny Chin, *Judge*) granted summary judgment in favor of JWT against

1

BoA and, in turn, in favor of BoA against the third-party defendant banks. The third-party presenting and collecting banks appealed. We hold that (1) the drawer's alleged failures do not constitute negligence, pursuant to U.C.C. § 3-406; (2) the drawer's alleged post-alteration failures will not preclude recovery for the loss associated with an altered check under the "substantial contribution" test of U.C.C. § 3-406; (3) the payor bank acted in good faith and, accordingly, the lack-of-good-faith exception to the presentment warranty, *see id.* 4-208(a), did not apply; and (4) the District Court did not err in granting summary judgment to the payor bank even though the bank had not yet reimbursed the drawer of the check for the fraud.

Affirmed.

> INA B. SCHER, Davis & Gilbert LLP, New York, NY, *for Plaintiff-Appellee J. Walter Thompson, U.S.A., Inc.*
>
> RONALD M. NEUMANN (David B. Chenkin, *on the brief*), Zeichner Ellman & Krause LLP, New York, NY, *for Defendant and Third-Party Plaintiff-Appellee, Bank of America Corporation.*
>
> WILLIAM D. WALLACH, McCarter & English LLP, Newark, NJ, *for Third-Party-Defendants-Appellants First BankAmericano, Federal Reserve Bank of Atlanta.*

JOSÉ A. CABRANES, *Circuit Judge*:

This appeal involves the allocation of liability for altered checks outlined in Articles 3 and 4 of the Uniform Commercial Code ("U.C.C.")[1] and the operation of the check collection system. The U.C.C. allocates liability for a stolen or altered check among the various parties involved in the check collection process. Plaintiff-appellee J. Walter Thompson ("JWT") is the drawer of the check. Bank of America ("BoA") is the payor bank and the drawee of the check. The Federal Reserve Bank of Atlanta ("Atlanta Fed") is a collecting bank and a presenting bank. First BancoAmericano ("FBA") is the depository bank, a collecting bank, and a presenting bank.

---

[1]The parties agree that the applicable law to this dispute is that of New Jersey and Georgia, where the events at issue occurred. Because both states have adopted the 1990 Revised Uniform Commercial Code, the citations herein refer to that version of the U.C.C.

2

We are asked to determine (1) whether JWT acted negligently in failing to take certain preventive measures upon learning of prior fraud on its checking account with BoA and, if so, whether that negligence "substantially contributed" to the check fraud, thereby barring JWT from obtaining a recovery pursuant to U.C.C. § 3-406(a), *post* at 6; (2) whether BoA acted in good faith in paying the altered check and, if BoA did not, whether the lack-of-good-faith exception to the presentment warranty, *see* U.C.C. § 4-208, *post* at 8, bars its claims for breach of the presentment warranty against the two presenting and collecting banks; and (3) whether a district court may grant summary judgment to a payor bank for losses associated with a presenting bank's breach of the presentment warranty before the payor bank has reimbursed the drawer for the amount of the altered check.

**BACKGROUND**

A.    The Check Collection Process

In the normal functioning of the check collection process, the "drawer" of a check issues to the "payee" a check drawn on an account of the drawer at the "drawee bank." The check then flows "downstream" through the banking system, from the drawer to the payee and ultimately to the drawee bank (also described as the payor bank, *see id.* § 4-105(3)), which is ordered to make payment, *see id.* § 4-104(a)(8). The payment, in turn, "flows upstream" through the various intermediary banks, making its way from the drawee/payor bank to the payee's account. *See* James J. White & Robert S. Summers, *Uniform Commercial Code* 544-45 (4th ed. 1995) ("White & Summers") (describing the flow of check and payment through the check processing system); U.C.C. § 4-105(4) (defining "intermediary bank"). The payee's bank, which is the first to receive the check, is known as the "depositary bank." *Id.* § 4-105(2). The other intermediary banks serve as "collecting banks" or "presenting banks" at various points in the collection process. A "collecting bank" is a bank, other than the payor bank, that handles a check for collection. *Id.* § 4-105(5). A "presenting bank" is a bank, other than the payor bank, that presents an item for payment. *Id.* § 4-105(6). An intermediary bank can serve as both a collecting bank and a

3

presenting bank. The check collection system in a normal, uncomplicated case is depicted graphically in the appendix to this opinion.

B.   Liability for Stolen and Altered Checks

Articles 3 and 4 of the U.C.C. outline a scheme for allocating the loss resulting from an altered check among the parties involved in the check processing system. When a drawer issues an instrument such as a check, the drawer "set[s] it afloat upon a sea of strangers" and, in so doing, "voluntarily enters into a relation with later holders which justifies imposition of a duty of care." *Id.* § 3-406 cmt. 1 (internal quotation marks omitted). When a check is stolen, altered, and later presented for payment, losses result. The U.C.C. allocates liability for these losses through what one court has described as a burden-shifting framework, *Putnam Rolling Ladder Co. v. Mfrs. Hanover Trust Co.*, 74 N.Y.2d 340, 345 (1989), combined with principles of comparative negligence, *see* U.C.C. § 3-406 cmt. 4; *see also* White & Summers, *ante*, at 566-67.[2] We describe that framework briefly below.

(1)   Drawee/payor bank liability

When a drawer's account is charged for an altered check, the drawer may assert a claim for breach of U.C.C. § 4-401 "downstream" against the drawee/payor bank. Section 4-401 of the U.C.C. states that a bank may charge its customer's account only when the bank is presented with "an item that

---

[2] The U.C.C. determines which of the various parties involved in the check processing system will bear the cost of fraud based on whether the fraud arises from (1) a forged drawer's signature, (2) a forged endorsement, or (3) an alteration to the instrument.

While liability for payment of either an altered or a forged check lies with the drawee/payor bank pursuant to U.C.C. § 4-401, the drawee/payor bank may sue "upstream" for a breach of the presentment warranty. In the case of a forged signature, the presentment warranty is limited to the warranty that the presenting bank has no knowledge the drawer's signature is forged. *See* U.C.C. § 4-208(a)(3). Generally, liability for a check with a *forged signature* lies with the drawee/payor bank. In the case of a *forged endorsement*, losses generally rest with the party who accepted the check from the forger or the forger himself. *See id.* § 3-405(b) cmt. 1. The loss associated with an *altered check* typically rests with the party who took it from the wrongdoer. The presentment warranties shift the losses for the alteration to the presenting banks, *see* U.C.C. § 4-208(a)(2), and ultimately to the depositary bank.

This allocation reflects the ability of parties to detect the forgery and prevent the loss. *Wachovia Bank, N.A. v. Foster Bancshares, Inc.,* 457 F.3d 619, 622 (7th Cir. 2006). A forged drawer signature can most readily be detected by the drawee/payor bank, which is presumed to be familiar with the signature of its customer. *Id.* A forged endorsement, however, is more easily detected by the depository bank, which is likewise presumed to know its customer's signature. Finally, rules for loss shifting associated with alteration rest on the assumption that alteration can be most easily detected by the party who receives the check in the first instance. *Id.*

is properly payable from the account."[3] A check that is forged or has an altered payee is not "properly payable." U.C.C. § 4-401 cmt. 1. In most cases, a drawee/payor bank is strictly liable for charging its customer's account for a forged or altered check pursuant to Section 4-401. *See, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Wells Fargo Bank N.A.*, 374 F.3d 521, 525 (7th Cir. 2004) ("[O]rdinarily a bank is strictly liable for charging a customer's account with an amount that the customer had not authorized the bank to pay. . . ."); *Lor-Mar/Toto, Inc. v. 1st Constitution Bank*, 871 A.2d 110, 115 (N.J. Super. Ct. App. Div. 2005) (noting this principle of strict liability as a matter of New Jersey law). After the drawee/payor bank discovers that an altered check has been charged against the drawer's account, the drawer is entitled to have its account credited for the amount of the check. *See* White & Summers, *ante*, at 552.

Section 3-406(a) protects a party who paid a check against suit by any party who contributed to the alteration. Accordingly, where a drawer's own negligence contributed to the alteration, the drawer is precluded from "asserting the alteration" against a drawee/payor bank that "in good faith, pays the instrument or takes it for value or for collection." U.C.C. § 3-406(a).[4] The U.C.C. defines "good faith," generally, as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Id.* § 3-103(a)(4). When multiple parties are negligent, Section 3-406(b) allocates liability for the loss associated with an altered check "according to the extent to which the failure of each to exercise ordinary care contributed to the loss."[5]

---

[3] Pursuant to U.C.C. § 4-401(a):

> A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.

[4] Section 3-406(a) reads as follows:

> A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

[5] Specifically, Section 3-406(b) provides that:

> if the person asserting . . . preclusion [pursuant to subsection(a)] fails to exercise ordinary care in paying or

In order to avoid liability under Section 4-401 for charging its customer's account for an altered check, the drawee/payor bank must prove that (1) its customer, the drawer, was negligent; (2) the drawer's negligence "substantially contributed" to the alteration; and (3) the drawee/payor bank paid the check in "good faith." The drawer may, in turn, assert the drawee/payor bank's own negligence in taking an altered check. The drawer must establish that (1) the drawee/payor bank was negligent, and (2) that the drawee/payor bank's negligence contributed to the loss. Liability will then be allocated on the basis of comparative fault. *Travelers*, 737 A.2d at 694.

(2)     Liability of the depositary bank, presenting banks, and collecting banks

A drawee/payor bank may also assert claims "upstream" against the presenting bank, a collecting bank, and the depositary bank for the loss associated with the altered check. In addition, a drawee/payor bank may bring a breach of warranty action against any party who presented the altered check for payment. In most cases, "[t]hese warranty actions will continue up the collection chain to the party who took from the [wrongdoer] or to the [wrongdoer] himself." *Perini Corp. v. First Nat. Bank*, 553 F.2d 398, 404 (5th Cir. 1977) (analyzing previous version of the U.C.C.).

The banks involved in the check collection process extend two types of warranties: presentment and transfer warranties. Section 4-208 sets out the presentment warranty given by depositary and collecting banks when presenting a check to the drawee/payor bank for payment. It provides, in relevant part, that:

> If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment, and (ii) a previous transferor of the draft, at the time of transfer, *warrant to the drawee*

---

taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

U.C.C. § 3-406(c) places the burden of proving negligence on the party asserting preclusion pursuant to subsection (a) or a failure to exercise ordinary care pursuant to subsection (b).

*that pays or accepts the draft in good faith that . . . . the draft has not been altered.*

U.C.C. § 4-208(a) (emphasis added).[6] Section 3-417 imposes a nearly identical presentment warranty on

any party presenting a check for collection.

Section 4-207 outlines the transfer warranty given by customers and collecting banks:

(a) A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that . . . (3) the item has not been altered . . . .

(b) If an item is dishonored, a customer or collecting bank transferring the item and receiving settlement or other consideration is obliged to pay the amount due on the item (i) according to the terms of the item at the time it was transferred, or (ii) if the transfer was of an incomplete item, according to its terms when completed as stated in Sections 3-115 and 3-407. The obligation of a transferor is owed to the transferee and to any subsequent collecting bank that takes the item in good faith. A transferor cannot disclaim its obligation under this subsection by an indorsement stating that it is made "without recourse" or otherwise disclaiming liability.

---

[6] The remainder of that provision reads as follows:

> (b) A drawee making payment may recover from a warrantor damages for breach of warranty equal to the amount paid by the drawee less the amount the drawee received or is entitled to receive from the drawer because of the payment. In addition, the drawee is entitled to compensation for expenses and loss of interest resulting from the breach. The right of the drawee to recover damages under this subsection is not affected by any failure of the drawee to exercise ordinary care in making payment. . . .
>
> (c) If a drawee asserts a claim for breach of warranty under subsection (a) based on an unauthorized indorsement of the draft or an alteration of the draft, the warrantor may defend by proving that the indorsement is effective under Section 3-404 or 3-405 or the drawer is precluded under Section 3-406 or 4-406 from asserting against the drawee the unauthorized indorsement or alteration.
>
> (d) If (i) a dishonored draft is presented for payment to the drawer or an indorser or (ii) any other item is presented for payment to a party obliged to pay the item, and the item is paid, the person obtaining payment and a prior transferor of the item warrant to the person making payment in good faith that the warrantor is, or was, at the time the warrantor transferred the item, a person entitled to enforce the item or authorized to obtain payment on behalf of a person entitled to enforce the item. The person making payment may recover from any warrantor for breach of warranty an amount equal to the amount paid plus expenses and loss of interest resulting from the breach.
>
> (e) The warranties stated in subsections (a) and (d) cannot be disclaimed with respect to checks. Unless notice of a claim for breach of warranty is given to the warrantor within 30 days after the claimant has reason to know of the breach and the identity of the warrantor, the warrantor is discharged to the extent of any loss caused by the delay in giving notice of the claim.
>
> (f) A cause of action for breach of warranty under this section accrues when the claimant has reason to know of the breach.

U.C.C. § 4-208.

U.C.C. § 4-207(a)(3), (b).[7]  The transfer warranty of Section 4-207 is given only by bank customers and

collecting banks, but an identical transfer warranty contained in Section 3-416 applies to any "person

who transfers an instrument for consideration." *Id.* § 3-416(a).  A drawee/payor bank can bring a

warranty cause of action pursuant to U.C.C. §§ 4-207 and 4-208 against "upstream" banks that

transferred an altered check and presented it for payment.  *See, e.g.*, *Wachovia Bank, N.A. v. Fed. Reserve

Bank of Richmond*, 338 F.3d 318, 321 (4th Cir. 2003).

C.      Factual Background

On October 31, 2001, plaintiff-appellant JWT, an advertising agency, issued a check in the

amount of $382,210.15 ("Check") payable to one of its vendors, Outdoor Life Network.  The Check

was issued from JWT's checking account ("Account") at BoA.  At an unknown date, an unknown

person altered the payee on the Check to "Diversified Business Enterpises [sic], Inc"[8] and deposited the

Check into an account maintained by Diversified Business Enterprises at First BankAmericano.[9]  FBA

then presented the Check to the Federal Reserve Bank of New York, which, in turn, presented it to the

Federal Reserve Bank of Atlanta.  The Atlanta Fed then presented it to Bank of America via BoA's

[7] Section 4-207 further provides:

> (c) A person to whom the warranties under subsection (a) are made and who took the item in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the item plus expenses and loss of interest incurred as a result of the breach.
>
> (d) The warranties stated in subsection (a) cannot be disclaimed with respect to checks.  Unless notice of a claim for breach of warranty is given to the warrantor within 30 days after the claimant has reason to know of the breach and the identity of the warrantor, the warrantor is discharged to the extent of any loss caused by the delay in giving notice of the claim.
>
> (e) A cause of action for breach of warranty under this section accrues when the claimant has reason to know of the breach.

[8] In a federal criminal proceeding for criminal check fraud conspiracy, the government alleged in the indictment that a check for $382,210.15 had been deposited into a business account controlled by a defendant at First BankAmericano.  *See* Superceding Indictment at 14, *United States v. Dedji*, No. 03-254 (D. N.J. Oct. 23, 2003)  The parties do not dispute that the check in that case was the Check at issue here.

[9] FBA is a three-branch bank doing business in New Jersey.

check processing facility in Georgia. BoA debited $382,210.15 from the Account of JWT and transmitted the payment back "upstream" through the bank collection system to FBA, which, presumably, deposited the funds into the account held by Diversified Business Enterprises. Later, JWT discovered that the payee of the Check had been altered, notified BoA the same day of the alteration and the fact that BoA had made a payment on the altered Check, and sought to have its Account credited for the amount of the Check. BoA did not credit the Account but, instead, demanded that FBA remit the proceeds of the Check to BoA. FBA refused to do so.

At the time of the events at issue, BoA had a program in place to identify potentially fraudulent checks (the "Positive Pay Program" or "Positive Pay"), and JWT subscribed to this service during the relevant time period.[10] Positive Pay permitted BoA to match check numbers, dates, and amounts on the checks that were presented to BoA with a list provided by JWT prior to payment of a check. If the Positive Pay Program identified a discrepancy in any of this information, BoA would not make payment on the check. At the time of the instant fraud, Positive Pay did not have the capability of matching payee names ("payee matching"), a capability that arguably would have detected the fraud here.

Prior to the payment of the Check, ten other instances of check fraud or attempted check fraud occurred on checks issued from JWT's Account. At least one of these instances involved the simple alteration of a payee name. BoA credited the Account for the amount of that altered check, so JWT did not suffer a loss associated with that earlier payee alteration. Another of the instances involved both the alteration of a payee name along with the alteration of the amount of the check. BoA's Positive Pay system detected this particular fraud and JWT's account was not charged. The losses suffered by JWT associated with the remaining prior instances of fraud was less than $9,000.

D.    Procedural History

After JWT discovered the fraud at issue here and BoA refused to credit its Account for the

---

[10] JWT also took certain other general preventive measures we need not discuss for the present purposes.

9

amount of the Check, JWT brought this action against BoA. JWT alleged that BoA was negligent and that BoA had violated its duties under U.C.C. §§ 4-103[11] and 4-401 (the provision governing when items are "properly payable"). BoA, in turn, filed a third-party complaint against FBA and the Atlanta Fed for violations of U.C.C. §§ 3-416 (transfer warranty), 3-417 (presentment warranty), 4-207 (transfer warranty), and 4-208 (presentment warranty), *see ante* notes 6, 7 and accompanying text (text of provisions).

After the completion of discovery, JWT moved for summary judgment against BoA, and BoA moved for summary judgment against FBA and the Atlanta Fed. FBA opposed JWT's motion on the merits but BoA did not.[12] The District Court granted both motions, concluding that BoA was strictly liable to JWT for charging JWT's Account for an item not "properly payable," U.C.C. § 4-401(a). The Court also concluded that FBA and the Atlanta Fed had breached the presentment warranties they had extended to BoA under U.C.C. § 4-208.

The Court rejected FBA's argument that summary judgment was inappropriate because questions of fact existed as to whether JWT was negligent within the meaning of U.C.C. § 3-406(a), *see, ante*, note 4 and accompanying text, in failing to prevent the check fraud. FBA asserted that JWT had negligently failed to respond appropriately after learning of previous check fraud on its Account.

---

[11] Section 4-103 provides in relevant part:

> The effect of the provisions of this Article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.

U.C.C. § 4-103(a). It is not clear under what theory JWT asserted this Section 4-103 claim against BoA. Neither the District Court's order nor the parties' briefs on appeal address U.C.C. § 4-103.

[12] Although FBA was not a party to JWT's action against BoA, FBA opposed the motion based on the theory that U.C.C. § 4-208(c), *see ante*, note 8, gave it a "statutory right" to do so. The District Court "assume[d] [without deciding] that FBA ha[d] that right."

FBA also opposed BoA's motion for summary judgment against FBA and the Atlanta Fed. FBA concedes that if the Atlanta Fed's liability is affirmed on appeal, the Atlanta Fed would be entitled to recover from FBA in an action for a breach of the transfer warranty.

10

Specifically, FBA faulted JWT for (1) not closing the Account or (2) instituting a payee matching program to detect future fraud. FBA and Atlanta Fed argue on appeal that a jury could have found that JWT's failure to take these preventive measures "substantially contributed" to the alteration of the Check, and, if so, that JWT would be precluded from recovery against BoA while BoA would be precluded from recovery against FBA and the Atlanta Fed. *See* U.C.C. § 3-406(a). The Court considered the ten prior incidents of check fraud on the Account and determined that none of these instances "suggest[ed] that the mere act of keeping the account open 'substantially contributed' to the alteration" of the Check. The Court similarly rejected FBA's suggestions that JWT's failure to take remedial measures—such as instituting payee matching, a process unavailable at the time—substantially contributed to the fraud. Finally, the Court rejected as pure conjecture FBA's suggestions that JWT or BoA could have been involved, negligently or otherwise, with the criminal check fraud conspiracy that obtained and altered the Check.

**DISCUSSION**

We review *de novo* a district court's grant of summary judgment, drawing all reasonable inferences in favor of the non-moving parties, *see, e.g.*, *Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121, 124 (2d Cir. 2005); *Carney v. Philippone*, 332 F.3d 163, 167 (2d Cir. 2003), which in this case are FBA and the Atlanta Fed.

We conclude that JWT's alleged failures do not constitute negligence within the meaning of U.C.C. § 3-406, and that JWT's alleged post-alteration negligence could not have substantially contributed to the check alteration, as required to preclude recovery under U.C.C. § 3-406. We also hold that the standard of "good faith" for a drawee/payor bank under the U.C.C. is one that commands a "duty of fair dealing" and not a "duty of care." In light of the applicable standard, we conclude that BoA did not violate its duty of fair dealing and therefore did not act in bad faith. Finally, we hold that a drawee/payor bank is not required to reimburse the drawer before proceeding against the collecting

11

banks for breach of warranty.

A. _____Whether allegations of BoA's and JWT's negligence are sufficient to defeat summary judgment_

The presentment scheme outlined in the U.C.C. "shifts losses up the collection stream to presenting and depositary banks." *Fed. Reserve Bank*, 338 F.3d at 321. Accordingly, the drawee/payor bank that pays an altered check in good faith may bring an action for damages against the presenting banks for breaching the presentment warranty. *See* U.C.C. § 4-208(b). In a case such as this, in which a check has been altered, the usual result will be that the presenting banks are strictly liable to the drawer and the drawee/payor bank for breaching the presentment warranty. The exceptions to this result arise when either the drawee/payor bank lacked good faith in paying the draft, *see id.* § 4-208(a), or when the drawer failed to exercise ordinary care which "substantially contribute[d]" to the alteration of the check, *id.* § 3-406(a). Because neither of these exceptions apply in this case, we affirm the District Court's summary judgment in favor of JWT and BoA.

(1) _____Drawer's alleged negligence pursuant to U.C.C. § 3-406(a)_

The primary issue on this appeal is whether JWT's failure to take certain preventive measures after learning of previous fraud on the Account constituted negligence which "substantially contribute[d]," *id.* § 3-406(a), to the alteration of the Check. FBA and Atlanta Fed contend that, upon learning of the prior instances of fraud, JWT should have (1) closed the Account and (2) instituted a payee matching system to detect future fraud. They argue that JWT's failure to take these steps constituted negligence that substantially contributed to the alteration of the check and JWT should, therefore, be estopped from asserting the alteration against BoA.

The Fourth Circuit addressed the issue of drawer negligence in *Federal Reserve Bank*, a case arising from the theft and alteration of a check drawn on an account from which six checks had been stolen previously. 338 F.3d at 324. The defendant in that action contended that the drawer's failure to implement certain precautionary measures to prevent check theft—specifically, sending checks via an

12

electronic funds transfer system or Federal Express rather than through the mail—constituted a failure to exercise ordinary care that "substantially contributed to the alteration." *Id.* at 323. The Fourth Circuit rejected this argument. Because the prior thefts "constituted a very small percentage" of the checks issued by the drawer, were relatively remote in time, and were committed by individuals then believed to be in custody, the drawer's decision to continue using regular mail to send its checks hardly amounted to "a failure to exercise ordinary care, much less a failure to exercise ordinary care that substantially contributed to the alteration." *Id.* at 324.

Here, FBA and the Atlanta Fed contend that, in light of the prior instances of fraud, JWT should have (1) closed the Account and (2) instituted a payee matching system to detect future fraud. Based on the facts before us, however, we conclude that ordinary care did not compel JWT to adopt either of these measures. As the District Court observed, the previous incidents of altered checks resulted in *de minimis* losses compared to the significant costs which JWT would have incurred by closing the Account. In addition, FBA came forward with no evidence showing that had JWT closed the Account and drawn checks on a different account, the new account would have been less susceptible to check theft, thereby averting the theft giving rise to this litigation. Under these circumstances, closing the Account would not have been a reasonable, much less a necessary, exercise of ordinary care. With respect to FBA's suggestion that JWT should have implemented payee matching, the record shows that payee matching was not available to JWT and BoA at the time of the presentment of the Check. JWT reasonably relied on BoA's Positive Pay fraud detection service with the technological limitations that existed at the time. JWT's failure to utilize an unavailable technology can hardly be said to constitute a "failure to exercise ordinary care" pursuant to U.C.C. § 3-406.

We further hold that a defense based on a drawer's alleged post-alteration negligence is foreclosed by the plain language of U.C.C. § 3-406. When a drawer's own negligence "substantially contributes" to the alteration of a check, the drawer is "precluded from asserting the alteration" against

13

a collecting or presenting bank, such as FBA, that processes the check in good faith. *Id.* § 3-406(a); *see ante* note 6 and accompanying text. The Official Comments to Section 3-406 define "substantial contribution" as an action which is "a contributing cause of the alteration . . . and a substantial factor in bringing it about." U.C.C. § 3-406 cmt. 2. The Comments also provide certain examples of negligent conduct that would satisfy this test, including: (a) a drawer who writes the amount of the check in a manner that makes it easy to alter the amount and (b) a drawer who mails the check to the wrong payee. *Id.* § 3-406 cmt. 3. Accordingly, "while the principal cause of the alteration may be the act of a [third-party wrong-doer], things that make the [wrong-doer's] job easier" may constitute negligence that "substantially contributes" to the alteration of a check and therefore precludes a claim based on the alteration.[13] White & Summers, *ante*, at 571; *see also Fed. Reserve Bank*, 338 F.3d at 324-25 ("[T]he unambiguous terms of [Section 3-406] provide a defense to the [presenting bank] only if [the drawer's] negligence substantially contributed to the alteration."); *Zambia Nat'l Commercial Bank Ltd. v. Fidelity Int'l Bank*, 855 F. Supp. 1377, 1387 (S.D.N.Y. 1994) ("[U]nder § 3-406 the bank must establish not merely that the customer was careless, but that the customer's negligence set the stage for, or in some way provided the wrongdoer with the opportunity to make the unauthorized signature."); *Fidelity Bank v. United Nat'l Bank of Wash.*, 630 F. Supp. 16, 19 (D.D.C. 1985) (noting that a bank's mishandling of a check "increased the possibility that an unauthorized person would be able to forge the payee's name and pose as the intended payee").

The lack of payee matching cannot, as a matter of logic, have "substantially contributed" to the

---

[13] It should be noted, however, that the substantial-contribution rule does not conform to the principle that the party who can best prevent the loss bears the burden for the loss. *See ante*, note 4. The substantial contribution rule means that a drawer will never bear the brunt of its own failure to take certain preventive measures or to adopt state-of-the-art warning techniques for check alterations. The substantial-contribution rule rests on the notion that alteration can best be detected by the bank which first takes the check from the wrong-doer, *see ante* note 4 and accompanying text. In some instances, such as the alteration of the payee name, it may be that the payor bank or drawee would be best suited to detect the fraud. *See Foster Bancshares,* 457 F.3d at 622-23 (noting that "modern copying technology" may render the distinction between forgery and alteration, and its loss allocation rules, obsolete). Although the substantial-contribution rule may not reflect comparative advantage in preventing losses associated with altered checks, it is the role of the U.C.C. drafters, not this Court, to determine whether the rule should be reconsidered in light of the changing technological landscape.

alteration at issue in this litigation. A payee matching mechanism identifies check fraud when an altered check is presented to the drawee/payor bank for payment, in other words, after the alteration has already occurred. Because this technology detects alterations after the fact, but does not prevent them in the first instance, JWT's alleged failure to adopt payee matching cannot have "contributed" or "set the stage" for the alteration. We therefore conclude that JWT's alleged failures to take certain preventive measures suggested by FBA here did not constitute negligence which substantially contributed to the alteration of the Check.

(2)     Drawee/payor bank's alleged lack of good faith pursuant to U.C.C. § 4-208(a)

U.C.C. § 4-208(a) outlines the presentment warranty owed to a drawee/payor bank that pays an altered check in good faith. *See ante* note 6 and text accompanying (text of provision). Good faith, in turn, is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." U.C.C. § 3-103(4). Therefore, if a drawee/payor bank pays an altered check in good faith, it receives the benefit of the presentment warranty and shifts the loss to the presenting banks.

The good faith requirement incorporates standards of honesty and fair dealing but not of negligence. In other words, the good faith requirement does not impose a standard of care but, rather, a standard of *fair dealing*.[14]   *See Fed. Reserve Bank*, 338 F.3d at 322-23; White & Summers, *ante*, at 573. Because FBA has not alleged that BoA acted unfairly or dishonestly, this distinction is fatal to FBA's argument that BoA did not act in good faith.

FBA and the Atlanta Fed point to no action or inaction that would suggest, much less establish,

---

[14] BoA's negligence would have been at issue only as part of the comparative fault analysis set forth in U.C.C. § 3-406(a), (b). *See ante*, notes 4-5 and accompanying text (text of provisions). If JWT had been precluded from asserting the alteration against BoA as a result of JWT's own negligence, *see* U.C.C. § 3-406(a), then JWT could have asserted that BoA had "fail[ed] to exercise ordinary care in paying or taking the instrument and that failure substantially contribute[d] to [the] loss," *see id.* § 3-406(b). Because we have concluded that JWT was not negligent, the remaining question is one of BoA's good faith in paying the check.

The issue of BoA's alleged negligence is not a question in its presentment warranty claim against FBA and the Atlanta Fed. *Cf. Id.* §4-208(b) ("The right of the drawee to recover damages under this subsection is not affected by any failure of the drawee to exercise ordinary care in making payment.").

15

that BoA did not act with "honesty in fact." Instead, they suggest that BoA acted negligently because it should have closed the Account of its own accord or employed more advanced fraud detection capabilities, such as payee matching. While these alleged failures, if proven, might arguably establish negligence, they do not demonstrate a lack of "honesty in fact" or a failure to "observ[e] . . . reasonable commercial standards of fair dealing." U.C.C. § 3-103(4). Indeed, the Fourth Circuit has held that a payor bank's reliance on a Positive Pay system, instead of on other methods of fraud detection, precluded a finding of a lack of good faith. *See Fed. Reserve Bank*, 338 F.3d at 323. We conclude, therefore, that BoA acted in good faith within the meaning of Section 4-207 and can properly claim the benefit of the presentment warranty.

In sum, the District Court properly granted summary judgment to JWT and BoA. FBA and the Atlanta Fed have pointed to no material disputes of fact on the issue of JWT's alleged negligence or BoA's lack of good faith.

B.     Whether the District Court prematurely granted summary judgment in favor of BoA before BoA reimbursed JWT for the altered check

FBA and the Atlanta Fed contend that the District Court erroneously granted summary judgment to BoA. They question whether BoA has, in fact, incurred a loss associated from the Check in light of BoA's decision to delay crediting JWT's Account for the amount of the loss.

We find no requirement in the text of U.C.C. § 4-208 suggesting that a drawee/payor bank must first credit the drawer's account with the amount of the loss before it can bring a presentment warranty action against the presenting banks to recover that loss. Section 4-208(b) states that "[i]f the drawee accepts the draft (i) breach of warranty is a defense to the obligation of the acceptor, and (ii) if the acceptor makes payment with respect to the draft, the acceptor is entitled to recover from a warrantor for breach of warranty the amounts stated in this subsection." Those amounts include both damages "equal to the amount paid by the drawee less the amount the drawee received or is entitled to receive from the drawer because of the payment" as well as "compensation for expenses and loss of interest

16

resulting from the breach." U.C.C. § 4-208(b).

Courts have routinely granted summary judgment in favor of a payor bank that had not yet reimbursed the drawer. *See, e.g.*, *First Nat'l Bank of Neednah v. Sec. Nat'l Bank of Springfield*, No. 80-0026-f, 1981 U.S. Dist. LEXIS 15495, at *10-11 (D. Mass. Nov. 5, 1981) (granting summary judgment to drawer against payor bank and, at the same time, granting summary judgment to payor bank against collecting bank); *cf. Foster Bancshares*, 457 F.3d at 622 (affirming declaratory judgment that depositary bank was required to indemnify drawee/payor bank for breach of presentment warranty). The facts of this litigation do not compel a different result. Judgment has been entered against BoA in favor of JWT; accordingly, there is nothing premature in finding FBA and the Atlanta Fed liable, in due course, to BoA. The District Court's grant of summary judgment was proper.

## CONCLUSION

For the reasons stated above, we conclude that (1) JWT's alleged failures do not constitute negligence within the meaning of U.C.C. § 3-406; (2) JWT's alleged post-alteration negligence could not have substantially contributed to the check alteration; (3) BoA acted in good faith and, accordingly, was entitled to pursue a claim for breach of the presentment warranty; and (4) the District Court did not err in granting summary judgment to BoA before BoA reimbursed JWT for the loss arising from the alteration of the Check.

The judgment of the District Court is **AFFIRMED**.

17

**Appendix**

